UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT J. LAURRANCE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for American Home Mortgage Assets Trust 2006-5, Mortgage-Backed Pass-Through Certificates Series 2006-5; POWER REO MANAGEMENT SERVICES, INC., a Corporation; HOMEWARD RESIDENTIAL, Inc., a corporation; and Does 1-50<br><br>　　　　Defendants. | 3:13-cv-0694-LRH-WGC<br><br>ORDER |

Before the Court is Defendants' Motion for Summary Judgment. Doc. #19.[1] Plaintiff Robert J. Laurrance ("Laurrance") filed an Opposition (Doc. #29), to which Defendants replied (Doc. #36).

**I.      Facts and Procedural Background**

Laurrance is a retired captain formerly employed by the Metropolitan Fire District in Sacramento, California. In late 2011, Laurrance began searching for a home in the Lake Tahoe area to live in during his retirement. After inspecting numerous homes, Laurrance's real estate agent showed him a home located at 565 Buchanan Drive in Incline Village, Nevada. Laurrance liked the

---

[1] Refers to the Court's docket number.

home, and learned that Defendant Deutsche Bank National Trust Company ("DBNT") had acquired the property following foreclosure of the prior owners.

On February 4, 2012, Laurrance submitted a purchase offer, which was accepted on February 9. Also on February 9, Defendants signed a "Seller's Real Property Disclosure Form." This form denied the existence of any "encroachments, easements, zoning violations or non-conforming uses" in addition to "any substances, materials, or products which may be an environmental hazzard such as, but not limited to, asbestos, radon gas, urea formaldehyde, fuel or chemical storage tanks, contaminated water or soil on the property." Doc. #29, Ex. 17. The form also stated that the property was free of any features "shared in common with adjoining land owners such as: walls, fences, road, driveways or other features whose use or responsibility for maintenance may have an affect on the property." *Id.* Finally, the form denied the existence of "any other conditions or aspects of the property which materially affect [the property's] value or use in an adverse manner." *Id.* Escrow for sale to Laurrance closed on March 13, 2012.

It is undisputed that Laurrance was not aware prior to the sale that an underground high pressure gas transmission pipeline lies beneath the property. In fact, there are two pipelines on the 565 Buchanan Drive property; one is ten inches in diameter and the other is approximately eight inches in diameter. On January 26, 2012, Southwest Gas Company ("Southwest") notified Yun Suh ("Suh"), an attorney in the legal department for Deutsche Bank AG ("DBAG"),[2] a separate corporate entity from DBNT, that Southwest's subsidiary Paiute Pipeline Company has a pipeline running across 565 Buchanan Drive, that the pipeline had been exposed by the previous owner, and that the problem needed to be addressed as soon as possible. Suh responded that the message had been forwarded, but did not indicate to whom the email was forwarded.[3] Laurrance became aware of the pipelines on his property in early May, 2012, when he received a letter from Paiute Pipeline

---

[2] Deutsche Bank AG is not a party to this action.

[3] Laurrance requested information about the contents and destination of this forwarded email in discovery. Defendants responded: "Those documents will not be produced, however, as they are all protected by the attorney-client privilege." Doc. #19, Ex. B.

1  Company, a subsidiary of Southwest, requesting to set a meeting to discuss easement and pipeline
2  exposure issues. *See* Doc. #29, Ex. 3. Laurrance states that Paiute told Laurrance that "Deutsche
3  Bank had been notified" about the pipeline issues. *Id.*, Laurrance Decl. ¶4.

4  Laurrance purchased the property for $474,900.00 but represents that he would not have
5  purchased the property if he had known about the pipelines that had not been disclosed. Laurrance
6  represents that discovery of the pipelines resulted in a loss of value to the property of at least
7  $71,235.00. On December 19, 2013, Laurrance filed a Complaint alleging five causes of action: (1)
8  violation of Nev. Rev. Stat ("NRS") 113.110; (2) breach of contract; (3) unjust enrichment; (4)
9  fraud; and (5) negligence. Doc. #1. Defendants filed their Motion for Summary Judgment on
10 December 17, 2014. Doc. #19. After multiple extensions of time, Laurrance filed a timely
11 Opposition, and Defendants filed a timely reply.

12 **II.   Legal Standard**

13 Summary judgment is appropriate only when the pleadings, depositions, answers to
14 interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record
15 show that "there is no genuine issue as to any material fact and the movant is entitled to judgment
16 as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the
17 evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the
18 light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*
19 *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154
20 (9th Cir. 2001). A motion for summary judgment can be complete or partial, and must identify
21 "each claim or defense—or the part of each claim or defense—on which summary judgment is
22 sought." Fed. R. Civ. P. 56(a).

23 The party moving for summary judgment bears the initial burden of informing the court of
24 the basis for its motion, along with evidence showing the absence of any genuine issue of material
25 fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the
26 burden of proof, the moving party must make a showing that no "reasonable jury could return a

3

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On an issue as to which the nonmoving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252. "[S]peculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

**III.  Discussion**

   **A. Violation of NRS § 113.100 *et seq.***

Defendants argue that the pipelines do not constitute a "defect" under NRS § 113.100 *et seq.*, and that Laurrance has introduced no evidence to indicate that Defendants were aware of the pipelines when the property was sold to Laurrance. Laurrance argues that Defendants are not entitled to summary judgment on this claim because the pipelines constitute a defect as defined by the statute, and disputed questions of material fact remain as to whether Defendants were aware that there were pipelines underneath the property at the time of Laurrance's purchase.

Section 113.100 *et seq.* requires a seller of residential property to provide the buyer with a written form "disclosing the conditions of the residential property," including "the condition of any

electrical, heating, cooling, plumbing and sewer systems on the property, and the condition of any other aspects of the property which affect its use or value." NRS § 113.120(1). The disclosure form requires the seller "to indicate whether or not each of those systems and other aspects of the property has a defect of which the seller is aware." *Id.* The statute defines "defect" as "a condition that materially affects the value or use of residential property in an adverse manner." NRS 113.100(1). This is a continuing obligation; if "after service of the completed disclosure form but before conveyance of the property to the purchaser, a seller or the seller's agent discovers a new defect in the residential property that was not identified on the completed disclosure form," the seller must "inform the purchaser or the purchaser's agent of that fact, in writing, as soon as practicable after the discovery of that fact but in no event later than the conveyance of the property to the purchaser." NRS § 113.130(1)(b).

    **1.**    **Defect**

Laurrance's primary argument that the undisclosed pipelines constitute a defect under NRS 113.100 *et seq.* involves reduction in property value. Laurrance estimates that the actual value of his property declined by fifteen percent—from $474,900.00 at the time of the sale, to $403,665.00 after discovery of the pipelines. Doc. #29 at 11. Defendants argue that Laurrance's estimation of the property's decline in value should be disregarded because it is not supported by an expert report or other evidence in the record. However, "[a]n owner of property may testify to its value . . . so long as the owner has personal knowledge, *or* the ability to provide expert proof, of value." *Stephans v. State*, 262 P.3d 727, 731 (Nev. 2011) (emphasis added). "A party to a lawsuit may testify as to the value of her personal or real property when that value is an issue in the case." *Dugan v. Gotsopoulos*, 22 P.3d 205, 207 (Nev. 2001).[4] "The jury may consider this testimony for

---

[4] Defendants argue that *Dugan* is distinguishable because it "involves the value of an automobile, not real property." Doc. #36 at 6. However, *Dugan* specifically states that a party may testify "as to the value of her personal *or real property*." 22 P.3d at 207 (emphasis added). Defendants also refer to *Pitzel v. Software Development and Investment of Nevada*, an unpublished Nevada Supreme Court decision, in which the court held that a minority shareholder could only testify as to the value of his interest in the company if he testified to certain complexities. No. 49163, 2008 WL 6124816, at *4-5 (Nev. Dec. 31, 2008). The Court noted that

5

its weight in conjunction with other evidence of value." *Id.*  Expert testimony is not required.  *Id.* at 207-08.  Here, Laurrance represents that he has personal knowledge of the value of the property based on his research of at least thirty homes prior to purchasing the 565 Buchanan Drive property, and his experience living at the property and learning its attributes and flaws.  As an owner of the real property at issue in this lawsuit, Laurrance's opinion about the reduced value of the subject property is not improper.  A jury can consider Laurrance's value testimony in conjunction with other evidence, including Defendants' expert report.

Defendants also argue that Laurrance's valuation testimony should be disregarded because Defendants' expert witness conducted an appraisal and determined that the value of the property was $495,000.00.  *See* Doc. #19, Ex. D.  However, the differences in testimony between Laurrance and Defendants' expert highlights a disputed question of material fact rather than the absence of a disputed question.  Accordingly, the Court will not automatically discount Laurrance's opinion regarding the reduced value of his property, and agrees with Laurrance that if proven, this reduction in value could constitute a defect under NRS § 113.100 *et seq*.

Defendants argue that Laurrance's claimed defect is irrelevant because the statute for a seller's failure to disclose states that "the purchaser is entitled to recover from the seller treble the amount necessary to repair or replace the defective part of the property."  NRS § 113.150(4).  Defendants point to a portion of Laurrance's deposition to argue that he "made it clear that he has not spent a single dollar on repairs."  Doc. #36 at 8.  Indeed, Laurrance stated that his testimony regarding the $71,235.00 reduction in value is not meant to reimburse him for replacement or repairs.  Doc. #19, Ex. C at 173:2-9.  However, Laurrance's Response to Defendants' Motion "estimates the loss of value to the property of at least $71,235.00 plus out of pocket expenses for attorney fees for assisting review of the pipeline maintenance issues of at least $4,000."

---

valuation of a minority interest in a closely held corporation "is notoriously complex."  *Id.* at *5.  Valuation of real property is also complex, but the Court will not apply the *Pitzel* standard to real property where the Nevada Supreme Court has expressly held that a party can testify as to the value of real property, and has not held that a party must meet the same complexities outlined in *Pitzel* to establish reliable personal knowledge.

6

Doc. #29 at 5. The Court finds that Laurrance has adequately pleaded damages pursuant to NRS § 113.150(4). Nothing in the statute indicates that the plaintiff must repair or replace the harmed property prior to filing suit. If the evidence at trial supported Laurrance's position, then a reasonable jury could find that Laurrance was entitled to damages pursuant to the $71,235.00 reduction in value and/or $4000.00 reviewing the pipeline issues in order to make repair or replacement possible.

The Court has found that disputed questions of fact remain regarding whether the pipelines constitute defects under NRS § 113.100, *et seq.* and whether Laurrance is entitled to recover damages under NRS § 113.150(4). Accordingly, the Court shall grant Defendants' Motion as to this claim only if no facts in the record indicate that Defendants were aware of any defects prior to the sale.

### 2.   Defendants' Awareness of the Defect

Defendants argue that they cannot be liable for any failure to disclose defects on subject property because they were not aware of such defects when Laurrance purchased the property. A seller's duty of disclosure only arises if the seller is aware of the relevant defects. NRS § 113.140(1). The Nevada Supreme Court has held that, "[t]he term 'aware' means 'marked by realization, perception, or knowledge." *Nelson v. Heer*, 163 P.3d 420, 425 (Nev. 2007). The court added that such knowledge was necessary because "it is impossible for a seller to disclose conditions in the property of which he or she has no realization, perception, or knowledge." *Id.* "The determination of whether a seller is aware of a defect, however, is a question of fact to be decided by the trier of fact." *Id.*

Laurrance argues that there remains a disputed question of material fact regarding whether Defendants were aware of the pipelines on the property prior to the sale. In particular, Laurrance points to the fact that Southwest contacted New York-based DBAG attorney Suh on January 23, 2012, stating that there was a problem with the pipelines on the subject property that needed to be addressed. Suh then stated that the request email would be forwarded, and that Southwest should

inform Suh if they were not contacted by the end of the following day. Doc. #19, Ex. B. Laurrance sought more information about the forwarded email through the discovery process, but Defendants claimed attorney-client privilege. *See* Doc. #29, Ex. 13 at 3-4.[5] There is no dispute that these communications occurred before sale of the property became final, on March 13, 2012.

Defendants argue that knowledge by an attorney at DBAG does not constitute admissible evidence that DBNT had knowledge of the pipelines because the two entities are separate.[6] Indeed, "federal courts have generally respected corporate efforts to maintain separate identities, and will not pierce the formalities of separation merely because of a showing of complete ownership." *Hickory Travel Sys., Inc. v. TUI AG*, 213 F.R.D. 547, 553 (N.D. Cal. 2003) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001)). "A subsidiary functions as the parent's alter ego if the subsidiary is so intertwined with the parent that it functions as part thereof, and if disregarding that unity of interest would result in fraud or injustice." *Id.* Laurrance points to the fact that the same law firm represents both DBAG and DBNT as national counsel, and Defendants' assertion of the attorney-client privilege related to Suh's forwarding of the email regarding the pipelines, as evidence that "[t]he two entities are unified in all matters." Doc. #29 at 8.

Here, the Court need not determine whether DBNT and DBAG operate as the same entity. Rather, the Court need only determine whether disputed questions of material fact remain as to whether DBNT had knowledge of the pipelines on Laurrance's property. Even if the entities are completely separate, DBNT could have had knowledge of the pipelines based on the fact that Suh—a DBAG lawyer—received an email from Southwest about the pipelines and stated that the request had been forwarded, adding that Southwest should check in if they did not receive a

---

[5] Defendants argue that the email chain at issue, which was produced in response to subpoenas filed by Laurrance attorney John P. Henderson, are inadmissible because Henderson is licensed to practice law in California, not Nevada, and he did not seek leave to practice pro hac vice in Nevada. This contention is directly contradicted by the record. In particular, Henderson filed a Verified Petition to Practice Pro Hac Vice on December 19, 2013 (Doc. #2), and the Court granted said Petition on December 23, 2013 (Doc. #3).

[6] Defendants describe the entities as follows: "Deutsche Bank AG is a global financial services company headquartered in Frankfurt, Germany, whereas Defendant Deutsche Bank National Trust Company is a California corporation headquartered in Los Angeles." Doc. #19 at 11.

response by the following day. This creates an inference that the email was forwarded to the owners of the property—DBNT. Importantly, all evidence and inferences drawn therefrom must be resolved in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

The Court therefore finds that there remain disputed questions of material fact upon which a reasonable juror could determine that Defendants were aware of the pipelines underneath 565 Buchanan Drive prior to the sale to Laurrance. *See Nelson*, 163 P.3d 425 ("The determination of whether a seller is aware of a defect, however, is a question of fact to be decided by the trier of fact."). Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Laurrance's claim for violation of NRS § 113.100 *et seq*.

**B. Breach of Contract**

Laurrance argues that Defendants breached the contract for sale of the 565 Buchanan Drive property by failing to disclose the existence of the pipelines underneath the property. Defendants argue that the Court should grant their Motion as to this claim because Laurrance cannot establish the breach or damages element of a breach of contract claim.

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) breach by the defendant; and (4) damages resulting from defendant's breach. *See* Restatement (Second) of Contracts § 203 (2007); *see also Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)). "Whether a party has breached a contract and whether the breach is material are questions of fact." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536 (9th Cir. 2011) (citing *Hoffman v. Eighth Judicial District Court*, 823 P.2d 848, 850 (Nev. 1974)). However, "[i]nterpretation of a contract is a matter of law," and summary judgment "is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988).

1   Defendants' argument for summary judgment is "based on the same lack of evidence that is
2   fatal to [Laurrance's] NRS 113.100 *et seq.* claim. Specifically . . . Plaintiff cannot show that
3   Defendants knew of the existence of the gas lines prior to the close of the sale." Doc. #19 at 14.
4   As discussed above, the Court finds that disputed questions of material fact remain as to whether
5   Defendants knew of the existence of the pipelines before the sale occurred. Defendants argue
6   further that Laurrance "cannot prove he suffered any damages as a result of the breach" because his
7   estimation of the reduction in value of his property was not supported by an expert. *Id.* at 15. As is
8   also discussed above, a property owner "may testify as to the value of her personal or real property
9   when that value is an issue in the case, and expert testimony is not required." *Dugan*, 22 P.3d at
10  207. Accordingly, the Court finds that disputed questions of material fact remain and denies
11  Defendants' Motion for Summary Judgment as to Laurrance's breach of contract claim.

### C. Unjust Enrichment

Unjust enrichment occurs whenever an entity "has and retains a benefit which in equity and good conscience belongs to another." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). To prevail on a claim for unjust enrichment, the plaintiff must establish: (1) the existence of a benefit conferred on defendant by plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit by defendant under circumstances that would be inequitable for him to retain the benefit without payment. *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners*, 942 P.2d at 187.

Here, there is no dispute that Laurrance entered into a valid written contract with Defendants. In fact, Laurrance has sued Defendants for breach of said written contract. This Court has held that a claim for unjust enrichment can survive despite the presence of a written contract if one party argues that the written contract is invalid—such invalidity would prevent the application of the written agreement, and a party could then argue unjust enrichment based on an implied

agreement. *Cass, Inc. v. Production Pattern and Foundry Co., Inc.*, No. 3:13-cv-0701, 2015 WL 995100, at *7 (D. Nev. Mar. 5, 2015) (citing *Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014)).  However, Defendants do not argue that the contract was invalid, but merely that their actions did not breach the contract as Laurrance alleges.  Because an unjust enrichment action cannot succeed where the parties entered into a valid written contract, the Court grants Defendants' Motion for Summary Judgment as to Laurrance's unjust enrichment claim.

**D. Fraud**

Defendants' Motion for Summary Judgment as to Laurrance's fraud claim relies on the legal standards applicable to dismiss a claim for fraud under Federal Rule of Civil Procedure 12(b)(6).  Courts can grant summary judgment for failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Racine v. PHW Las Vegas, LLC*, 46 F. Supp. 3d 1028, 1045 (D. Nev. 2014) (granting summary judgment on defendant's fraud-based punitive damages claim because plaintiff failed to allege fraud to the particularity requirements of Rule 9(b) in the complaint); *Diep v. Durst-Pro-USA, Inc.*, No. 04-0984, 2006 WL 1788175, at *8 (D. Or. June 23, 2006) (granting summary judgment on plaintiff's fraud claim for failure to meet the Rule 9(b) requirements, and denying leave to amend as futile); *Carr v. N.Y. Stock Exch., Inc.*, 414 F. Supp. 1292, 1301 (N.D. Cal. 1976) (finding that a court can enter summary judgment "on the ground that the amended complaint does not relate with sufficient particularity the elements of fraud required by" Rule 9(b)).

To succeed on a claim for civil fraud, a plaintiff must establish five elements: (1) a false representation by the defendant; (2) defendant's knowledge or belief that the representation is false; (3) defendant's intention to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance; and (5) damage to the plaintiff. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).  Federal Rule 9(b) requires a party alleging fraud to plead such a claim with particularity.  Averments of fraud must be accompanied by "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading

about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (alterations in original) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Defendants are correct that Laurrance has failed to meet the Rule 9(b) heightened pleading requirement to support his claim for fraud. Although the Complaint outlines general facts about the alleged fraud, it lacks detail and fails to include "the who, what, when, where, and how" with any specificity. For pleading deficiencies, courts generally grant plaintiffs leave to amend the complaint's shortcomings. The standard for granting leave to amend is generous, and courts will only deny leave to amend if the party opposing amendment shows "bad faith, undue delay, prejudice to the opposing party, futility of amendment," or that the plaintiff has previously amended the complaint without healing its defects. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The Court does not find at this point that amendment would be in bad faith, futile, cause undue delay, or otherwise prejudice Defendants. Accordingly, Laurrance's fraud claim is dismissed without prejudice. If Laurrance elects to file an Amended Complaint, he shall do so within fourteen days of this Order.

**E. Negligence**

"[T]o prevail on a traditional negligence theory, a plaintiff must establish that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v. Senior Bridges of Sparks Family Hosp.*, 282 P.3d 727, 732 (Nev. 2012).

///

The Complaint bases Laurrance's negligence claim on a breach of Defendants' "legal duty to disclose all known defects on the property . . . prior to [Laurrance's] purchase of the subject property." Doc. #1 ¶35.  Defendants argue that this claim must fail because Laurrance "cannot prove that Defendants knew of the existence of the gas lines prior to the sale of the Property." Doc. #19 at 18.  As discussed above, disputed questions of material fact remain as to whether Defendants knew of the pipelines under the property at the time of the sale.  Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Laurrance's negligence claim.

## IV.  Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. #19) is GRANTED in part and DENIED in part.  Laurrance's claim for fraud is dismissed without prejudice.

IT IS FURTHER ORDERED that if Laurrance wishes to file an amended complaint he shall do so within fourteen (14) days of this Order.

IT IS SO ORDERED.

DATED this 17th day of September, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE